461 F.Supp. 714 (1978)
INTERNATIONAL SOCIETY FOR KRISHNA CONSCIOUSNESS and Gregory Ferguson on Behalf of all Members of the International Society for Krishna Consciousness
v.
George SCHRADER, City Manager of Dallas, Texas, Donald Byrd, Police Chief of Dallas, Texas, and Jerry Barshop, Director of Dallas Convention Center.
Civ. A. No. CA-3-77-1329-G.
United States District Court, N. D. Texas, Dallas Division.
May 5, 1978.
*715 John F. Jordan and Howard C. Rubin of Jordan, Rubin & Pace, Dallas, Tex., for plaintiffs.
Joe G. Werner, Asst. City Atty., Dallas, Tex., for defendants.

MEMORANDUM OPINION
PATRICK E. HIGGINBOTHAM, District Judge.
On October 17, 1977, this court denied the International Society for Krishna Consciousness (ISKCON)'s application for temporary injunction. The City of Dallas (City) by enforcement of an ordinance sought to bar ISKCON from entering the environs of its Convention Center to solicit funds and proselytize surgeons attending a medical meeting. The doctors had leased the convention auditorium from the City, its owner. ISKCON asked the court to enjoin the ordinance. As then stated:
"The quarrel is precipitated by the desire of Iskcon members to proselytize people in attendance at events conducted at the convention center and the desire of the City to prevent activity that might annoy its tenants and reduce the attractiveness of the convention center to prospective tenants. Iskcon asserts that the City Ordinance is constitutionally anemic in that it stifles First Amendment expression, is impermissibly vague, grants standardless discretion to officials to determine the propriety of views to be disseminated and impermissibly delegates to lessees of the City the right to censor use of public facilities." Order Denying Application for Temporary Injunction.

The court did not reach the constitutional question because it found the ordinance otherwise unenforceable against ISKCON. The City fell back to its "rights" as a landowner and invoked state trespass laws. Because the City continues to offer the Center for rent, the question of the legality of ISKCON's exclusion from certain areas of the Convention Center remains.
ISKCON urges that the First Amendment bans the City's efforts to exclude their activity. The City responds that it is acting only as a landowner leasing its facility to all with financial means, denies that it *716 lets the auditorium in a discriminatory manner, and lastly denies it influences a lessee's admission practices. The material facts are not in dispute.

The Facility
The parties stipulated that the Dallas Convention Center is owned by the City of Dallas, but leased for compensation.[1] The Convention Center is a large building containing an arena, theater, ballroom, meeting rooms, and several meeting halls, all connected with wide interior corridors. Each are available for rent under a standard form lease (Defendants' Exhibit 39) that provides ". . . Lessee shall have reasonable rights of ingress and egress through the halls, passageways, lobbies and corridors, subject to the terms and conditions of this agreement, including but not limited to Section 12 herein." Section 12 provides "No portion of the sidewalks, ramps, entries, corridors, passageways, vestibules, halls, lobbies, stairways, aisles, driveways, or access to public utilities of said Dallas Convention Center shall be obstructed by Lessee or used for any other purpose other than for ingress or egress from the demised premises without the written consent of the Director of the Dallas Convention Center. The doors, skylights, stairways or openings that reflect or admit light into any place in the building, including hallways, fire hose cabinets, corridors and passageways, radiators and house lighting appurtenances shall not be covered or obstructed by Lessee without written approval of the Director." The general public does not use the interior corridors, passageways, sidewalks, or other places to gather. They are in fact of little practical value except as means of ingress and egress to parts of the Center. Admission to all events is controlled by the Center's lessees on conditions determined by each lessee. Part of the Center's construction cost came from revenue bonds issued pursuant to City ordinance. Evidence at trial revealed that the Center has occasionally received additional money from general funds of the City.

Public Forum
ISKCON's activity[2] in a public forum would indisputedly be protected by the First Amendment. Equally basic is the principle that not all city owned property is a public forum. ISKCON contends that the Civic Center is a public forum, relying upon Southeastern Promotions, Ltd. v. Conrad, 420 U.S. 546, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975); Southeastern Promotions, Ltd. v. City of West Palm Beach, 457 F.2d 1016, 1079 (5th Cir. 1972); Wolin v. Port of New York Authority, 392 F.2d 83 (2nd Cir. 1968). ISKCON seems to argue that the auditorium is a public forum solely because it is financed by general revenue bonds of the City or otherwise occasionally draws for its operation upon the local public fisc; alternatively, that the Center is a public forum by virtue of the use to which it has been put.
Stating what is not presented may assist in the framing of what is. There is no contention (because apparently the City has not) that the City in any way censors either in its rental practices or in its practice of allowing use of interior passageways only as means of ingress and egress. Instead the question is whether the City, either by its control over all interior corridors *717 or by enforcement of any "right" of its tenant to censor and exclude, is violating the First Amendment. No one would seriously urge that a city can legally engage in "content-based discrimination" in renting its municipal auditorium.[3] The Southeastern Promotions cases, supra, relied upon by ISKCON so held but are not here factually apposite because the City of Dallas has not censored in its rental activity nor discriminated in its uniform ban on usage of interior ways for other than ingress or egress. That the facility is municipally owned and supported by tax money alone will not fix its status as a public forum. This argument would swallow too much if a municipality can own any nonpublic forum property, and obviously a city can. As the Supreme Court stated in Adderley v. Florida:
"The State, no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated. For this reason there is no merit to the petitioners' argument that they had a constitutional right to stay on the property . . the United States Constitution does not forbid a State to control the use of its own property for its own lawful nondiscriminatory purpose." 385 U.S. 39, 47-48, 87 S.Ct. 242, 247, 17 L.Ed.2d 149 (1966).
Instead, as ISKCON recognizes by the emphasis of its briefs, the use made of the facility is important in answering the question of public forum status.
It is more than appropriateness. That facilities are appropriate for public expression is insufficient to make them a public forum. Adderley v. Florida, 385 U.S. 39, 47, 87 S.Ct. 242, 17 L.Ed.2d 149 (1966), cf. Lloyd Corp. v. Tanner, 407 U.S. 551, 92 S.Ct. 2219, 33 L.Ed.2d 131 (1972). And more than frequent public usage of property is required. Lloyd Corp. v. Tanner, supra. As the Supreme Court stated in Amalgamated Food Employees Union v. Logan Valley Plaza, 391 U.S. 308, 88 S.Ct. 1601, 20 L.Ed.2d 603 (1968):
"The public is invited to the premises but only in order to do business with those who maintain establishments there . ." 391 U.S. at 338, 88 S.Ct. at 1619.
In Wolin the general public had free access to the Port Authority Concourse, shops, waiting rooms, and services. In Wolin there was both state ownership and an invitation to the public; and real property notions of dedication to the public ran through it all. The result was that a public place became a public forum. The cases suggest two ingredients  first, operation by the state, and second, a place usually associated with places of public expression such as streets, parks, or airports. The parties seek a declaration that the Convention Center, or as a lesser unit, its interior passageways, is or is not a public forum. The difficulty is that censorship by a tenant enforced by the City is not wholly private ordering. As the amount of state involvement increases, so correspondingly does the required justification for any censorship. Although city participation is not great, it is not absent. Moreover, the second element is a changing one. With state ownership there is a lessened tension between First Amendment and private property values. It follows that Wolin is distinguishable from Tanner in part by who owned the property. Here, although the City owns the property, there is a tension between the private property interests of the tenant and the First Amendment. Accordingly, the standards of Tanner for determining whether a public forum exists ought to be applied.
The City seems to seek a declaration of the nonpublic status of the physical plant. Such a blanket exception from the First Amendment is neither constitutionally permissible nor procedurally available. Although the City might act in a proprietary role as landowner and let the premises on nondiscriminatory terms, it cannot furnish as part of its rental package assurance to a tenant that the tenant's activity is insulated from the First Amendment.
*718 The measuring standard for the access due ISKCON turns on a tenant's usage of the rented facility measured in terms of Tanner. It follows that the absence of a public forum on these facts is not necessarily a permanent status. For example, a convention of dental supply technicians may well wish to rent the facility for its own purposes and admit only its members. The exclusion's legality (which would probably give us little pause) is measured by quite different standards from situations where the usage creates a public forum.[4] On the other hand, conducting a public meeting of the City Council in the facility would not increase the City's rights of censorship. Indeed this would present a state not private usage of property for a traditional public event concerning matters usually in the public forum. And various activities on this spectrum can be imagined.
Any suggestion that a tenant enjoys unfettered rights to exclude because its activity is wholly private ignores the dual role of the City as sovereign and as landlord in enforcing that censorship; it equally ignores the reality that public forum is not a concept controlled by the common law of real property, running with the land or reverting to and among tenancies. Given the interrelationship of the City, private property owners and the sometime propinquity to public events of the center's usage, the concept here serves as an analytical tool for assaying the relative interest of owners of private property and the interest of a free society in the highly placed value of open markets for ideas. A tenant of the city need not take his private property, here a leasehold interest into that marketplace, but if he does, he must abide its rules; and access to its public forum could include access to the interior passageways. That is, the City's limited grant of usage to the passageways as found in Section 12 of the standard form lease may then well have to give way. It follows from this reasoning that whether ISKCON can peddle its wares and ideas within the environs of the Center turns on the usage then being made of it.
That the City does not rent but only grants rights of ingress and egress to the interior passageways is of no aid to ISKCON, at least in the absence of a tenant's creating a public forum. In government institutions not performing speech-related functions such as a hospital or jail  even peaceful speech and assembly which interferes with the government  may be barred. This power is qualified by the idea of alternative access. See Albany Welfare Rights Organization v. Wyman, 493 F.2d 1319 (2nd Cir. 1974) allowing "orderly leaf-leting" in a county welfare office. Putting to one side the force of this substantive principle, the court finds ISKCON's argument that it has no alternative access to the Convention Center audience is not factually sound. The sidewalks outside the auditorium provide access to those attending events within. ISKCON wants, however, to be able to enter the facility and gain access to the corridors inside the overall structure but outside its auditorium or meeting halls. In the context of the "alternative" qualification to the right to exclude the public from certain government work places, ISKCON is not entitled to a place of confrontation where its audience cannot escape. That is, ISKCON is not entitled to a captive audience, only access.[5] Justice Black in Adderley emphatically rejected the idea ". . . that people who want to propagandize protests or views have a constitutional *719 right to do so whenever and however and wherever they please." 385 U.S. at 47-48, 87 S.Ct. at 247.
The principal lesson of the alternative access proviso is that even with nonpublic centers of government, there are few absolutes. When the usage of the Center by a tenant does not effectively render it a public forum, ISKCON may be excluded from the interior of the buildings because the outside sidewalks provide a reasonable effective means of soliciting and proselyting.[6]
This refusal to categorize forever the Convention Center as a nonpublic forum, although obviously to an extent open-ended, is a recognition of both of the limited role of declarative answers to factually barren constitutional issues and of the fluidity of state involvement and uses of the leased property inherent in this leasing operation. Given the circumstance that most usage of the facility appears to be essentially private and that these private property interests of a tenant would not be lightly overborne despite the state's role as landlord, it will be the rare case that a public forum is created. Rare though it may be, this court is not prepared to rule it out. Nor is it prepared to pass on situations yet not ripe. This explanation is made only to make plain that the narrowness of the possibility left open today ought negate any inference that the court is extending an invitation for review of usage by each tenant of the Convention Center.
All requests for injunctive relief are denied except those consistent with this memorandum. The parties will submit a proposed form of judgment.
NOTES
[1] The premises of the Dallas Convention Center is that area bounded by the west and southwest right-of-way line of Akard Street between Marilla Street and Canton Street; the northwest and north right-of-way line of Canton Street between Akard Street and Griffin Street; the east right-of-way line of Griffin Street between Canton Street and Young Street; and the south right-of-way line of Young Street between Griffin Street and Marilla Street and the northeast right-of-way line of Marilla Street between Young Street and Akard Street; save and except for that area known as Pioneer Park or Masonic Cemetery.
[2] The chants, solicitation, and dress of ISKCON are described in the Order of October 17, 1977, and cases there cited. Even in a public forum ISKCON's activity would be subject to a time, place, and manner restriction although there is little doubt that access at least to the interior corridors would then be sustainable, and that is the access sought.
[3] Some have urged that confinement of general subject matter such as opera to opera houses might not be barred discrimination. See J. Rehnquist dissenting in Southeastern Promotions, Ltd. v. Conrad, 420 U.S. at 570, 95 S.Ct. 1239.
[4] There may well be a more flexible notion of limited public forum. See Toward a Gayer Bicentennial Committee v. Rhode Island Bicentennial Foundation, 417 F.2d 632 (D.R.I.1976). See also Bonner-Lyons v. School Committee of City of Boston, 480 F.2d 442 (1st Cir. 1973). There the court stated: "[O]nce a forum is opened for the expression of views, regardless of how unusual the forum, under the dual mandate of the first amendment and the equal protection clause neither the government nor any private censor may pick and choose between these views which may or may not be expressed." 480 F.2d at 444 (emphasis the court's).
[5] The court in Tanner distinguished Logan Valley on the basis, inter alia, that in Logan Valley the pickets would ". . . have been deprived of all reasonable opportunity to convey their message to patrons of the . . . store . . ." 407 U.S. at 566, 92 S.Ct. at 2227.
[6] ISKCON's fight is for access to the interior walkways, not the auditorium, theatre, or meeting halls themselves. Although the City wants the line drawn along particular exterior sidewalks, that is, it would also deny ISKCON access to certain exterior sidewalks, its interest (or any tenant's interest) is too tenuous to sustain the exclusion. Although the exterior sidewalks are not all used daily by pedestrian traffic bound for places other than the Center, they are in appearance and location difficult to distinguish from city sidewalks. Moreover, an exterior-interior line is much more practicable. A bright clear line will best serve these competing interests.