**Charles Dale REED, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 6–87–086–CR.**

Court of Appeals of Texas,
Texarkana.

Nov. 8, 1988.

Rehearing Denied Nov. 29, 1988.
Discretionary Review Refused
March 22, 1989.

641

Richard W. Schmude, Tomball, for appellant.

Michael J. Guarino, Criminal Dist. Atty., Galveston, for appellee.

CORNELIUS, Chief Justice.

Charles Dale Reed was convicted of criminal trespass. Tex.Penal Code Ann. § 30.05 (Vernon Supp.1988). On appeal, he urges that the conviction should be reversed because the application of the criminal trespass statute to his activities on the occasion in question violates his rights of free speech under the First Amendment to the United States Constitution and Article I, § 8 of the Texas Constitution. He also complains of numerous trial errors. We overrule all these contentions and affirm the judgment.

### FACTS

Reed and several other persons were distributing anti-abortion booklets to high school students as the students got off school buses to go to morning classes at Friendswood High School. Reed was standing on a sidewalk inside the school campus at a bus unloading point about twenty feet from the two main entrances to the school. Wilson Elliott, the school administrator on duty, testified that he asked the group if they had permission to distribute the booklets and was told that permission was unnecessary because they were on a public sidewalk. Elliott told them that if they did not have permission they would have to leave, because the sidewalk was on

school property and it was a violation of school policy to allow anyone to distribute literature on the school campus. The leader of the group gave Elliott a lawyer's opinion letter which stated that the group had a right to distribute booklets on a public sidewalk. Elliott then contacted his superiors and the school's retained law firm. After doing so, he informed the leader of the group that the sidewalk was private property and asked them to leave. They refused and Elliott threatened to call the police. When they still refused, Elliott called the police. When the police arrived, they explained the law of criminal trespass to them and asked them to leave. When they again refused, they were arrested and charged with violating Tex. Penal Code Ann. § 30.05, which provides in part as follows:

> (a) A person commits an offense if he enters or remains on property or in a building of another without effective consent and he:
>
> .   .   .   .   .
>
> (2) received notice to depart but failed to do so.
>
> . . . .
>
> (c) An offense under this section is a Class B misdemeanor unless it is committed in a habitation or the actor carries a deadly weapon on or about his person during the commission of the offense, in which event it is a Class A misdemeanor.

## CONSTITUTIONAL QUESTION

The constitutional question is whether Reed's conviction of criminal trespass under the facts stated amounts to an impermissible restriction on his rights of free expression guaranteed by the United States and Texas Constitutions. U.S. Const. amend. I; Tex. Const. art. I, § 8.

■ General principles pertaining to the federal guarantee of free speech on public property are well established. The Constitution does not guarantee that those who want to propagandize their views may do so wherever and however they please. *Cornelius v. NAACP Legal Defense & Education Fund,* 473 U.S. 788, 105 S.Ct.

3439, 87 L.Ed.2d 567 (1985); *Adderley v. Florida,* 385 U.S. 39, 87 S.Ct. 242, 17 L.Ed. 2d 149 (1966); *Connecticut State Federation of Teachers v. Board of Education Members,* 538 F.2d 471 (2d Cir.1976). Nor does the Constitution require the government to freely permit access to all its property to those who wish to exercise their rights of free speech. *Cornelius v. NAACP Legal Defense & Education Fund,* supra; *Greer v. Spock,* 424 U.S. 828, 96 S.Ct. 1211, 47 L.Ed.2d 505 (1976); *Adderley v. Florida,* supra. The extent to which the government can control access to its property for expressive purposes depends on the nature of the forums, which have been divided into three categories. *Public forums* are those areas which traditionally have been devoted to assembly and public debate, such as public streets, sidewalks, and parks. *Limited public forums* are those forums which the government has voluntarily opened for use by the public or certain speakers for expressive activity. *Nonpublic forums* are those which neither by tradition nor government action have become forums for public communication. *Cornelius v. NAACP Legal Defense & Education Fund,* supra; *Perry Education Assn. v. Perry Local Educators' Assn.,* 460 U.S. 37, 103 S.Ct. 948, 74 L.Ed. 2d 794 (1983).

■ Speech may not be suppressed in public forums unless it is necessary to achieve a compelling governmental interest. When permitted, regulations restricting speech may only consist of reasonable time, place and manner regulations which are content neutral, are narrowly drawn to achieve the compelling governmental interest, and which leave open ample alternative channels for expression. *Cornelius v. NAACP Legal Defense & Education Fund,* supra; *Perry Education Assn. v. Perry Local Educators' Assn.,* supra. In limited public forums, speech is protected to the same extent as in traditional public forums, as long as the forums remain open, but access may be restricted to entities similar to those which have previously been allowed access. *Cornelius v. NAACP Legal Defense & Education Fund,* supra; *Perry Education Assn. v. Perry Local Ed-*

ucators' Assn., supra. In nonpublic forums, speech may be restricted so long as the regulations are reasonable and do not attempt to suppress expression because of public officials' opposition to the speaker's views. *Cornelius v. NAACP Legal Defense & Education Fund, supra; Perry Education Assn. v. Perry Local Educators' Assn., supra.*

■ Texas constitutional provisions guaranteeing freedom of expression are coextensive with the federal guarantees, and we will apply the same analysis and principles of construction in interpreting them.

■ The record in this case indisputably establishes that Reed's activities were conducted in a nonpublic forum. The place is not an area which by tradition has been devoted to public assembly or debate by the general public. It is entirely on school grounds, and there is no evidence that it had ever been opened by school authorities as a place for public expressive activity. A limited public forum cannot be created by inaction, or by permitting limited discourse, but only by intentionally opening a non-traditional forum for public discourse. *Cornelius v. NAACP Legal Defense & Education Fund, supra; United States v. Albertini,* 472 U.S. 675, 105 S.Ct. 2897, 86 L.Ed.2d 536 (1985); *Perry Education Assn. v. Perry Local Educators' Assn., supra; Texas State Teachers Association v. Garland Independent School District,* 777 F.2d 1046 (5th Cir.1985). Nor is an area converted into a limited public forum simply because members of the public are permitted to come and go at will. *Grattan v. Board of School Commissioners of Baltimore City,* 805 F.2d 1160 (4th Cir.1986).

Public school facilities and grounds have consistently been held to be nonpublic forums, unless there has been an intentional opening of them to expressive activity. *Perry Education Assn. v. Perry Local Educators' Assn., supra; Grattan v. Board of School Commissioners of Baltimore City, supra; Texas State Teachers Association v. Garland Independent School District, supra; Connecticut State Federation of Teachers v. Board of Education*

*Members, supra; compare: Grayned v. City of Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972).

The area involved in this case is clearly not a public forum, either traditional or limited.

■ Moreover, the statute applied in this case does not regulate speech. It regulates conduct. A general trespass statute may be constitutionally applied, even to those who trespass in order to communicate, so long as it is applied without discrimination and is not used for the primary purpose of suppressing speech. *United States v. Albertini, supra; Adderley v. Florida, supra; Hoffart v. State,* 686 S.W. 2d 259 (Tex.App.–Houston [14th Dist.] 1985, no writ); *Rains v. Mercantile National Bank at Dallas,* 599 S.W.2d 121 (Tex.Civ.App.–Dallas 1980, writ ref'd n.r. e.); Post, *Between Governance and Management: The History and Theory of the Public Forum,* 34 UCLA L.Rev. 1713 (1987). There is no evidence that Reed and his companions were required to leave the premises or discontinue their activities because of the content of the booklets they were distributing. There is no evidence that the school authorities objected to or disagreed with Reed's views as expressed in the booklets. Indeed, there is evidence that the school officials would have allowed the pamphlets to be left at various places in the school where they could be picked up by the students if they desired.

The enforcement of the criminal trespass statute in this instance did not violate Reed's rights of expression under either the United States or the Texas Constitutions.

## PRETRIAL AND TRIAL ERRORS

■ Reed contends that because the charging information stated only that the offense was committed on the property of Wilson Elliott it gave insufficient notice of the property's location as required by Tex. Code Crim.Proc.Ann. art. 21.09 (Vernon Supp.1988). That statute requires the charging instrument to specify the general locality of real estate involved in the of-

fense. The courts have ruled, however, that unless the property is the *object* of the offense rather than the *situs*, merely naming the county where the property is located is sufficient if (1) the offense may be committed anywhere in the county, (2) the place where it is committed is not an element of the offense, and (3) the court in which the offense is tried has countywide jurisdiction. *Santana v. State*, 658 S.W.2d 612 (Tex.Crim.App.1983); *Hodge v. State*, 527 S.W.2d 289 (Tex.Crim.App.1975). Trespass is an offense against the owner's possession and control of property, rather than an offense *against the property itself,* as is the case of an offense such as arson. *See Franks v. State*, 688 S.W.2d 502 (Tex. Crim.App.1985); *Lane v. State*, 621 S.W.2d 172 (Tex.Crim.App. [Panel Op.] 1981). The location of the property is not an element of the offense. Tex.Penal Code Ann. § 30.05. Thus, the allegation that the crime occurred in Galveston County is sufficient to meet the notice requirements.

■ Even if the exact location was necessary for adequate notice, its omission is not reversible error unless it had an impact on Reed's ability to prepare a defense. *Adams v. State*, 707 S.W.2d 900 (Tex.Crim. App.1986); Tex.Code Crim.Proc.Ann. art. 21.19 (Vernon 1966). Here, Reed's motion for joint trial and original motion to quash the information both specified the location of the trespass. As Reed was well aware of the location, the defect could not have prejudiced him in his defense.

■ Reed now contends that the information should also have been quashed because it failed to allege sufficient facts to bar a subsequent conviction. He raises this argument for the first time on appeal. A contention of that kind must be raised prior to trial and may not be raised for the first time on appeal. *American Plant Food Corporation v. State*, 508 S.W.2d 598 (Tex.Crim.App.1974); *Terry v. State*, 471 S.W.2d 848 (Tex.Crim.App.1971).

Reed also contends that the court reversibly erred in failing to allow him an evidentiary hearing on his motions to quash the information.

■ As far as the motions attacked defects in the information, no evidentiary hearing was necessary or proper. In judging the merits of such an attack, the court must consider only the face of the instrument. *Barnhart v. State*, 648 S.W.2d 696 (Tex.Crim.App.1983). Evidentiary hearings on other pretrial contentions are discretionary, not mandatory. Tex.Code Crim.Proc. Ann. art. 28.01, § 1(4) (Vernon Supp.1988). We cannot agree with Reed's argument that he should have had an evidentiary hearing on the constitutional questions raised in his motions to quash. Those contentions went to the very merits of the case—not to pretrial matters—and Reed was given a full hearing on those matters at trial. We perceive no error in this regard.

■ Reed next alleges error because the trial court allowed school officials to testify that, had permission been asked, they would have allowed Reed's pamphlets to be placed at strategic places in the school and made available to the students who desired to see them.

We find no error in the admission of this evidence. It was relevant to show that school officials were not suppressing Reed's material because of its content, or suppressing it at all, but that they were simply attempting to enforce the trespass statute to maintain a type of environment they believed was compatible with the institution's goals and purposes. Additionally, the same evidence had previously been admitted without objection, so Reed cannot complain of its subsequent admission.

■ Reed also complains of inflammatory remarks by State's counsel during final argument. Reed's counsel objected to the comments, and the objection was sustained. He did not request an instruction for the jury to disregard or move for a mistrial. When an objection is sustained and no further relief is requested, a defendant has received all the relief requested and no error is preserved. *Darty v. State*, 709 S.W.2d 652 (Tex.Crim.App.1986); *Nethery v. State*, 692 S.W.2d 686 (Tex.Crim. App.1985).

Error is claimed because the prosecutor commented that school guidelines had been prepared for situations such as "these criminal trespassers." When defense counsel objected, the prosecutor replied that this was simply the allegation of the information, and then in response to the court's instruction he rephrased the question. Defense counsel did not obtain a ruling on his objection and did not request an instruction or a mistrial. Absent an adverse ruling, no error is preserved for review.

Reed also argues that the trial court erred in refusing two jury instructions he requested. The lengthy instructions, one for federal law and one for Texas law, essentially told the jury that if Reed was peacefully distributing literature on school property before classes began and his activities were not disruptive, they should acquit him.

The court properly refused the instructions because they were legally incorrect. As noted earlier, the facts stated in the requested instructions do not render the enforcement of the trespass statute unconstitutional. Since the essential facts as to Reed's conduct are undisputed, the question whether the trespass statute is unconstitutional as applied to Reed is a question of law, and the instructions could have served no proper purpose. *Hoffart v. State*, supra.

Reed also contends that the evidence is insufficient to support the conviction. The thrust of his argument under this point is that he had no criminal intent, but thought he was lawfully entitled to do what he was doing.

The evidence is undisputed that Reed violated the criminal trespass statute by remaining on school property after being requested to leave. No culpable mental state is required for a conviction under this statute, other than a volitional refusal to leave when requested. We have already concluded that Reed did not have a constitutional right to engage in the activities, so the evidence is sufficient to support the conviction.

Finally, Reed argues that the court should have granted his motion in arrest of judgment. The bases of this point are the same as those we have covered and rejected in other points.

For the reasons stated, the judgment of the trial court is affirmed.