Rocky OTWELL, Appellant,

v.

The STATE of Texas, State.

No. 2–91–341–CR.

Court of Appeals of Texas, Fort Worth.

March 30, 1993.

Discretionary Review Refused June 9, 1993.

Robert L. Flournoy, Flournoy & Deaton, Lufkin, for appellant.

Tim Curry, Crim. Dist. Atty., Lynn Allison, Asst. Criminal Dist. Atty., Fort Worth, for state.

Before WEAVER, HICKS and FARRAR, JJ.

## OPINION

WEAVER, Justice.

Appellant was convicted by the trial court of attempted criminal trespass. *See* TEX.PENAL CODE ANN. § 30.05 (Vernon 1989). The trial court assessed a $50.00 fine as punishment. We affirm.

In his sole point of error, appellant alleges that the criminal trespass statute was unconstitutionally applied to him because he claims that his activities were protected by the first amendment to the United States Constitution. Appellant does not challenge the sufficiency of the evidence to support the trial court's finding.

The material facts are undisputed. Appellant belongs to a church group that feeds homeless people on Sunday mornings at the Water Gardens, a building and park owned by the City of Fort Worth ("City"). On September 23, 1990, a Sunday, the City had leased the Water Gardens to Combined Concepts Unlimited, a private, for-profit company employed by the International City Managers Association ("ICMA") to plan a reception at the Water Gardens on the opening day of the ICMA convention. The City informed the pastor of appellant's church that the Water Gardens had been leased to another group on September 23rd, and that no other group could use it that day. When appellant and others arrived on the morning of September 23rd, they were denied access to the Water Gardens and were forced to feed the homeless on the adjacent sidewalk. Appellant returned to the Water Gardens that evening while the ICMA reception was in progress to protest "the exclusive use of the park by

a private group for a private party and ignoring the plight of the homeless." Appellant was arrested after he crossed over a barricade blocking the entrance to the Water Gardens after having been warned by police officers to remain behind the barricade.

■ The Constitution does not require the government to freely permit access to all its property to those who wish to exercise their rights of free speech. *Cornelius v. NAACP Legal Defense & Educational Fund,* 473 U.S. 788, 799–800, 105 S.Ct. 3439, 3447, 87 L.Ed.2d 567, 578 (1985); *Reed v. State,* 762 S.W.2d 640, 643 (Tex. App.—Texarkana 1988, pet. ref'd), *cert. denied, Harris v. State,* 493 U.S. 822, 110 S.Ct. 81, 107 L.Ed.2d 47 (1989). The extent to which the government can control access to its property for expressive purposes depends on the nature of the forum. *Perry Education Ass'n. v. Perry Local Educators' Ass'n.,* 460 U.S. 37, 44, 103 S.Ct. 948, 954, 74 L.Ed.2d 794, 804 (1983); *Reed,* 762 S.W.2d at 643. Thus, our analysis must begin with a determination of the nature of the forum existing at the Water Gardens on September 23, 1990.

■ Forums are divided into three different categories. *Reed,* 762 S.W.2d at 643. Public forums are those areas which traditionally have been devoted to assembly and public debate, such as public streets, sidewalks, and parks. *Id.* Limited public forums are those forums which the government has voluntarily opened for use by the public or certain speakers for expressive activity. *Id.* Nonpublic forums are those which neither by tradition nor government action have become forums for public communication. *Id.*

■ Speech may not be suppressed in public forums unless it is necessary to achieve a compelling governmental interest. When permitted, regulations restricting speech may only consist of reasonable time, place and manner regulations which are content neutral, are narrowly drawn to achieve the compelling governmental interest, and which leave open ample alternative channels for expression. *Id.* In limited public forums, speech is protected to the

same extent as in traditional public forums, as long as the forums remain open, but access may be restricted to entities similar to those which have previously been allowed access. *Id.* In nonpublic forums, speech may be restricted so long as the regulations are reasonable and do not attempt to suppress expression because of public officials' opposition to the speaker's views. *Id.* at 644.

■ Appellant seems to argue that the Water Gardens is a public forum by virtue of its governmental ownership; however, not all city owned property is a public forum. *International Society for Krishna Consciousness v. Schrader,* 461 F.Supp. 714, 716 (N.D.Tex.1978) (*"ISKCON"*). Instead, the tenant's use of a leased public facility is the key to determining the facility's status as a public or nonpublic forum. *Id.* at 717. The facility may be classified as a nonpublic forum when the tenant's use does not embrace any of the indicia of a traditional, public forum. *See id.* at 718. For example, the *ISKCON* Court explained that the forum would be classified differently if the same facility were leased for a convention of dental supply technicians for its own purposes versus if it were leased for a public meeting of the City Council. *Id.* In the dental technician scenario, a nonpublic forum would exist, while in the City Council scenario, a public forum would be created. *Id.*

■ The case before us is more closely analogous to the dental technician example. The Water Gardens was leased by Combined Concepts Unlimited which had been retained by the International City Managers Association to organize a reception on the first night of the ICMA convention. The reception was not open to members of the general public. Indeed, only ICMA members and invited guests were admitted to the reception and persons were not admitted without a ticket. The reception was purely a social function. Therefore, on the evening of September 23, 1990, the Water Gardens was a nonpublic forum and Combined Concepts' leasehold interest in the

Water Gardens was a private property interest. *See id.* at 717–18.

 The purpose of the criminal trespass statute is not to regulate speech. Its purpose is to regulate conduct. *See Gibbons v. State,* 775 S.W.2d 790, 794 (Tex. App.—Dallas 1989, no pet.); *Reed v. State,* 762 S.W.2d at 644. The statute provides, in part, that "[a] person commits an offense if he enters or remains on property or in a building of another without effective consent and he ... received notice to depart but failed to do so." TEX.PENAL CODE ANN. § 30.05 (Vernon 1989). A general trespass statute may be constitutionally applied, even to those who trespass in order to communicate, so long as it is applied without discrimination and is not used for the primary purpose of suppressing speech. *Reed,* 762 S.W.2d at 644. There is no evidence that appellant was required to leave the premises or discontinue his activities because of the content of his message. The Water Gardens was closed to everyone except ICMA members and their invitees. Moreover, appellant had a reasonable alternative. A police officer testified that appellant and his companions were told that they could protest as long as they remained outside the barricades blocking the entrance to the Water Gardens complex itself. The officer further testified that a voice came from the crowd saying "[i]f you don't mind being arrested, come across." Appellant was not arrested until he physically crossed one of those barricades marking the entrance to the interior of the Water Gardens where the reception was being held. Under these facts, the enforcement of the criminal trespass statute did not violate appellant's rights of expression under the United States Constitution.

The judgment of the trial court is affirmed.