TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-99-00014-CR






Michael Bader, Appellant



v.



The State of Texas, Appellee







FROM THE COUNTY COURT AT LAW NO. 3 OF TRAVIS COUNTY


NO. 508348, HONORABLE DAVID F. CRAIN, JUDGE PRESIDING







 A jury convicted appellant, Michael Bader, of criminal trespass. See Tex. Penal
Code Ann. § 30.05 (West Supp. 2000) (1) ("criminal-trespass statute"). The county court at law
sentenced appellant to fifteen days' confinement in the Travis County Jail. Appellant raises two
issues on appeal: (1) the criminal-trespass statute is unconstitutional on its face and as applied to
him, and (2) the evidence was insufficient to establish that he was on the property "of another"
as required by the criminal-trespass statute. See id. We will affirm the county court at law's
judgment.


FACTUAL BACKGROUND

 On August 12, 1998, appellant was arrested for criminal trespass on the campus
of the University of Texas at Austin. Appellant had previously received two criminal-trespass
warnings for being on the university campus. Officer Pieper of the University of Texas Police
Department (UTPD) issued appellant his first warning on September 20, 1997. At trial, Officer
Pieper testified that, at the time of the first warning, appellant was in a television lounge inside
the student union building. Access to the lounge was restricted to university students, faculty, and
staff. Upon issuance of the warning, Officer Pieper told appellant that if he returned to campus,
he would be arrested for criminal trespass. The warning extended to the entire campus.

 Officer Chartier, also of UTPD, issued appellant's second warning on March 11,
1998. Officer Chartier found appellant sleeping on a sofa in the Flawn Academic Center. 
Appellant refused to sign the warning but left campus at Officer Chartier's request.

 On August 13, 1998, a security guard saw appellant at a computer terminal in the
Flawn Academic Center and reported his presence to UTPD. UTPD Officer Allen responded to
the call and asked appellant to accompany him from the building. The officer requested
appellant's identification and appellant gave him a false name and birth date. Officer Allen
testified that because he was suspicious of the information appellant gave him, he called the UTPD
station to request assistance from another officer. Officer Chartier arrived and recognized
appellant. Using appellant's Capital Metro identification card, Officer Allen discovered
appellant's actual identity and his prior criminal-trespass warnings. Officer Allen then arrested
appellant for criminal trespass.

 The University of Texas is a public, state-supported university. Appellant was
neither a student nor a member of the university's faculty or staff at the time of these events.


DISCUSSION

 By his first issue, appellant argues that the criminal-trespass statute is
unconstitutional on its face and as applied to him in this particular situation. (2) By his second issue,
he contends that there was insufficient evidence to prove beyond a reasonable doubt all of the
elements of criminal trespass because the State did not show that appellant was on the property
"of another." See id.


Constitutional Challenges

 Appellant argues that the Texas criminal-trespass statute is unconstitutionally
overbroad and unconstitutional as applied to him. The State contends that appellant waived his
constitutional challenges because he failed to raise these issues before the trial court. See Tex.
R. App. P. 33.1. Appellant, on the other hand, asserts that constitutional questions may be raised
for the first time on appeal. We agree that a facial constitutional challenge may be first addressed
on appeal. See Rabb v. State, 730 S.W.2d 751, 752 (Tex. Crim. App. 1987) ("Questions
involving the constitutionality of a statute upon which a defendant's conviction is based should
be addressed by appellate courts, even when such issues are raised for the first time on appeal.");
Gravis v. State, 982 S.W.2d 933, 937 (Tex. App.--Austin 1998, pet. ref'd). However, there is
a distinction between facial and "as applied" constitutional challenges because only facial
challenges affect the jurisdiction of a court to render a judgment against a defendant. See
McGowan v. State, 938 S.W.2d 732, 740 (Tex. App.--Houston [14th Dist.] 1996), aff'd sub nom.
Weightman v. State, 975 S.W.2d 621 (Tex. Crim. App. 1998). In contrast, an "as applied"
challenge acts as a defense to a conviction under a particular statute. See id. at 741-42. That
statute, however, still confers upon the court the power to act. See id. at 741. An allegation of
unconstitutional application of a statute cannot be raised for the first time on appeal; it must first
be made to the trial court. See Medina v. State, 986 S.W.2d 733, 735 (Tex. App.--Amarillo 1999,
pet. ref'd); McGowan, 938 S.W.2d at 742; Webb v. State, 899 S.W.2d 814, 817-18 (Tex.
App.--Waco 1995, pet. ref'd); Tex. R. App. P. 33.1.

 Relying on Smith v. State, 772 S.W.2d 946 (Tex. App.--Dallas 1989, pet. ref'd),
appellant argues that the reasoning in Rabb extends to both facial and "as applied" constitutional
arguments. In Smith, the court of appeals addressed both facial and "as applied" constitutional
challenges for the first time on appeal without distinguishing between the two types of arguments. 
See Smith, 772 S.W.2d at 948. However, we choose to follow Medina, McGowan, and Webb,
which apply the Rabb exception only to facial challenges. Texas Rule of Appellate Procedure
33.1 reflects the policy that issues should initially be presented to the trial court so as to provide
that court with an opportunity to prevent error. See Rhett v. State, 839 S.W.2d 93, 94 (Tex.
Crim. App. 1992). (3) Any exceptions to this rule should be narrowly drawn.

 Appellant did not preserve his "as applied" argument; his first issue is overruled
to the extent it complains that application of the criminal-trespass statute to his particular situation
is unconstitutional.

 We now consider appellant's contention that the Texas criminal-trespass statute is
unconstitutional on its face. Appellant argues that the statute is overbroad because it encompasses
public universities and permits university officials to ban persons from campus for no reason or
unconstitutional reasons. A statute may be overbroad if, although designed to punish activities
that are not constitutionally protected, it also includes within its scope activities that come within
the protection of the First Amendment. See 4 Ronald D. Rotunda & John E. Nowak, Treatise on
Constitutional Law, 263-64 (1999). 


An overbroad statute "sweeps within its scope a wide range of both protected and
non-protected expressive activity." Hobbs v. Thompson, 448 F.2d 456, 460 (5th
Cir. 1971). . . . A statute that is found to be overbroad may not be enforced at all,
even against speech that could constitutionally be prohibited by a more narrowly
drawn statute. See Broadrick v. Oklahoma, 413 U.S. 601, 613 (1973) . . . . 


 However, a statute will not be invalidated for overbreadth merely because
it is possible to imagine some unconstitutional applications. See Members of City
Council v. Taxpayers for Vincent, 466 U.S. 789, 800 (1984) . . . . Therefore, the
[United States] Supreme Court has developed a requirement that the overbreadth
must be "substantial" before the statute will be held unconstitutional on its face. 
See Taxpayers for Vincent, 466 U.S. at 800 . . . . Only if the statute "reaches a
substantial amount of constitutionally protected conduct" may it be struck down for
overbreadth. City of Houston v. Hill, 482 U.S. 451, 458 . . . (1978) (quoting
Village of Hoffman Estates [v. Flipside, Hoffman Estates, Inc.], 455 U.S. [489,]
494 [(1982)] . . .).



Commission for Lawyer Discipline v. Benton, 980 S.W.2d 425, 435 (Tex. 1998), cert. denied,
119 S. Ct. 2021 (1999). The criminal-trespass statute is clearly designed to punish activities that
are not constitutionally protected. The question before us is whether the statute also "reaches a
substantial amount of constitutionally protected conduct." Id. Appellant provides us with little
help in making this determination. He makes no allegation that his speech was wrongfully
suppressed or that he was a victim of discrimination because of his viewpoints. He does not claim
that the criminal-trespass statute, by its terms, requires him to obtain approval for expressive or
communicative conduct on the university campus. He concedes that he has suffered no violation
of a constitutional right or freedom protected by the First Amendment. Rather, he appears to
argue that a public university must have a constitutional basis to exclude a person from its
campus. He asserts that he had a constitutional right to be on the university campus and that right
"was violated due to the enforcement of an unconstitutional statute." (4) We do not believe this
assertion puts the potential deprivation of a right protected by the First Amendment in issue, and
therefore appellant does not appear to present a proper overbreadth challenge to the criminal-trespass statute. However, in the interest of justice we will consider appellant's argument. See
Tex. R. App. P. 38.1(e); 38.9. In so doing, we recognize that a litigant may, in certain instances,
attack an overly broad statute without demonstrating that his own conduct could not be regulated
by a statute that is more narrowly drawn. See Broadrick v. Oklahoma, 413 U.S. 601, 612 (1973). 
Construing appellant's complaint liberally, we believe it asserts that the statute's "very existence
may cause others not before the court to refrain from constitutionally protected speech or
expression." Id.

 The extent to which a government may control access to its property for expressive
purposes depends on the nature of the forum. See Perry Educ. Ass'n v. Perry Local Educators'
Ass'n, 460 U.S. 37, 45-46 (1983); Reed, 762 S.W.2d at 643. The respective limitations upon
government regulation of speech within a forum depend on the particular nature of the forum. 
See Perry Educ. Ass'n, 460 U.S. at 45. A public forum is an area that has traditionally been
devoted to assembly and public debate, such as a public street or a sidewalk. See id. In a public
forum, speech may only be suppressed if it is necessary to achieve a compelling governmental
interest. See id. When permitted, regulations restricting speech may consist only of reasonable
time, place, and manner regulations that are narrowly drawn to achieve the governmental interest
and leave ample alternative channels for expression. See id. at 46. A limited public forum is one
that the government has opened for public expressive activity. See id. Speech in a limited public
forum may be regulated in the same fashion as a traditional public forum as long as the limited
forum remains open. See id. Finally, a nonpublic forum is one that neither traditionally nor by
government action has become a forum for public communication. See id. In a nonpublic forum,
speech may be restricted so long as the regulations are reasonable and do not attempt to suppress
expression because of a public official's opposition to the speaker's views. See id.

 The University of Texas campus is generally a nonpublic forum. (5) Public school
facilities and grounds have consistently been held to be nonpublic forums, unless there has been
an intentional opening of them for expressive activity. See Reed, 762 S.W.2d at 644. Therefore,
the university may restrict access so long as the regulations are reasonable and do not attempt to
suppress expression because of opposition to a speaker's views. See Perry Educ. Ass'n, 460 U.S.
at 46. Additionally, "[a] general trespass statute may be constitutionally applied, even to those
who trespass in order to communicate, so long as it is applied without discrimination and is not
used for the primary purpose of suppressing speech." See Reed, 762 S.W.2d at 644. We fail to
see how the criminal-trespass statute could "[reach] a substantial amount of constitutionally
protected activity," which is requisite to facial invalidity on overbreadth grounds. See Benton,
980 S.W.2d at 436 (citing Hill, 482 U.S. at 458).

 Appellant relies on Grody v. State, 278 N.E.2d 280 (Ind. 1972), to support his
contention that the criminal-trespass statute is overbroad. In Grody, the Indiana Supreme Court
held that a criminal-trespass statute that applied only to educational institutions was
unconstitutionally overbroad. See Grody, 278 N.E.2d at 282-83. The statute at issue in Grody
is distinguishable from the Texas criminal-trespass statute in two ways. First, the Texas statute
more clearly defines who may enforce its provisions by granting enforcement power to "the owner
or someone with apparent authority to act for the owner." Tex. Penal Code Ann.
§ 30.05(b)(2)(A). The Indiana statute allowed enforcement by "duly constituted officials." See
Grody, 278 N.E.2d at 281. Second, the Indiana statute expressly permitted an official to remove
someone from an educational institution "regardless of reason." See id. The Texas statute does
not grant such unfettered discretion to those enforcing the statute. The Grody court seemed
particularly concerned that because the Indiana trespass statute expressly granted absolute
enforcement authority to "officials," persons could be arrested for engaging in constitutionally
protected activity. See id. at 282-83. The Texas statute is not so broadly drafted. "[A] statute
will not be invalidated for overbreadth merely because it is possible to imagine some
unconstitutional applications." Benton, 980 S.W.2d at 436 (citing Broadrick, 413 U.S. at 613). (6) 

 In Broadrick, the Supreme Court reviewed an Oklahoma statute that restricted the
political activities of state personnel. See 413 U.S. at 602. The Court observed that, where
conduct is involved, the overbreadth of a statute must be both real and substantial when judged
in relation to its legitimate sweep, and whatever problems exist should be cured in a particular
case by an analysis of the fact situation to which the statute's sanctions, assertedly, may not be
applied. See id. at 612-13. Appellant's facts do not present a situation that bars application of
the criminal-trespass statute's sanctions. We hold that the Texas criminal-trespass statute is not
substantially overbroad and is not, therefore, unconstitutional on its face. We overrule appellant's
first issue.


Insufficiency of Evidence

 By his second issue, appellant asserts that evidence was legally insufficient to show
that he entered and remained on the property "of another." See Tex. Penal Code Ann. § 30.05. 
Specifically, appellant argues that his conviction should be reversed because the evidence does not
demonstrate that the University of Texas campus is the property "of another," but rather shows
that the property belongs to all citizens of Texas, including appellant. The State responds that any
rational trier of fact could have found beyond a reasonable doubt that the university police had a
greater right of possession of the property than appellant.

 To determine the legal sufficiency of the evidence to support a criminal conviction,
we view all the evidence in the light most favorable to the verdict and ask whether any rational
trier of fact could have found the essential elements of the offense beyond a reasonable doubt. 
See Jackson v. Virginia, 443 U.S. 307, 319 (1979); Staley v. State, 887 S.W.2d 885, 888 (Tex.
Crim. App. 1994). Any inconsistencies in the evidence should be resolved in favor of the verdict. 
See Moreno v. State, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988). This standard of review is
the same for both direct and circumstantial evidence. See Green v. State, 840 S.W.2d 394, 401
(Tex. Crim. App. 1992).

 The elements of criminal trespass are that: (1) a person, (2) without effective
consent, (3) enters or remains on the property or in a building of another, (4) knowingly,
intentionally, or recklessly, (5) when he had notice that entry was forbidden or received notice
to depart and failed to do so. See Tex. Penal Code Ann. § 30.05; Johnson v. State, 665 S.W.2d
554, 556 (Tex. App.--Houston [1st Dist.] 1984, no pet.). "'Another' means a person other than
the actor." Tex. Penal Code Ann. § 1.07(a)(5) (West 1994).

 In Arnold v. State, 867 S.W.2d 378 (Tex. Crim. App. 1993), the defendant was
accused of trespassing in a courthouse. See 867 S.W.2d at 378. The information against him,
instead of alleging that the defendant was on the property "of another," alleged that the defendant
trespassed on property "owned by Rey Cestero," a United States Marshal responsible for security
at the courthouse. See id. The court of criminal appeals held that "in criminal trespass cases
where the State alleges ownership, [Texas Penal Code section 1.07(a)(35)] is applicable and the
State may establish ownership by proving beyond a reasonable doubt that the complainant had a
greater right of possession than the defendant." Id. (emphasis added). (7) Here, the information did
not allege "ownership"; rather, the information alleged that appellant was on the property "of
another."

 The court of criminal appeals has not decided whether the definition of ownership 
under section 1.07(a)(35) of the Texas Penal Code applies in cases where the information does
not allege ownership. See Langston v. State, 855 S.W.2d 718, 721 (Tex. Crim. App. 1993). The
court, however, has indicated that requiring proof of ownership as opposed to demonstrating that
the property belongs to "another" imposes a greater burden upon the State. See State v. Kinsey,
861 S.W.2d 383, 385 (Tex. Crim. App. 1993); Langston, 855 S.W.2d at 721. Based on this
reasoning, in cases involving public property, we think the State satisfies the "of another" element
by showing that the complainant has a greater right of possession of the property.

 Citing State v. Staley, 814 S.W.2d 534 (Tex. App.--Houston [1st Dist.] 1991, pet.
ref'd), and Palmer v. State, 764 S.W.2d 332 (Tex. App.--Houston [1st Dist.] 1988, no pet.),
appellant argues that the phrase "of another" required the State to show that appellant did not have
title or any right of possession of the property and that a finding of a greater right of possession
on the part the university police was not sufficient to support his conviction. See Staley, 814
S.W.2d at 535; Palmer, 764 S.W.2d at 334. In Staley, relying on Palmer, the court of appeals
dismissed an information for failure to state an offense because it alleged the defendant trespassed
on property "owned by" the complainant rather than using the statutory phrase "of another." See
Staley, 814 S.W.2d at 535. The court explained that "[i]n both statutory and common usage,
'owned by' alleges a lesser burden of proof for the State than is required by the criminal trespass
statute." Id. (emphasis added). The reasoning and result of Staley have been implicitly
discredited by subsequent court of criminal appeals cases. See Kinsey, 861 S.W.2d at 384
(information using phrase "owned by" rather than "of another" sufficiently stated offense of
criminal trespass; requiring State to prove ownership increases prosecution's burden of proof);
Langston, 855 S.W.2d at 721; see also Vanderburg v. State, 874 S.W.2d 683, 684 (Tex. Crim.
App. 1994) (reversing lower court that relied on Staley and Palmer based on holding in Arnold
and Langston); State v. Garcia, 861 S.W.2d 386, 387 (Tex. Crim. App. 1992) (reversing lower
court that relied on Staley and Palmer based on holding in Kinsey).

 In Palmer, the court of appeals reviewed a case in which a defendant was convicted
of criminal trespass under an information that alleged ownership. See Palmer, 761 S.W.2d at
333. The court noted that there was a dispute concerning whether the defendant owned a partial
interest in the property at issue. See id. at 335. The court held that a finding of a "greater right
of possession" under the Penal Code's definition of "owner" was not sufficient to support a
conviction under the criminal-trespass statute. See id. at 334. Palmer has likewise been implicitly
rejected by the court of criminal appeals in Arnold and Langston. See Arnold, 867 S.W.2d at 378
(State may satisfy criminal-trespass statute in cases where State alleged ownership by proving
greater right of possession); Langston, 855 S.W.2d at 721; see also Vanderburg, 874 S.W.2d at
684; Garcia, 861 S.W.2d at 387. We hold that in cases involving public property, the State
satisfies the "of another" element of the criminal-trespass statute by proving beyond a reasonable
doubt that the complainant has a greater right of possession of the property than does the accused. (8) 
To endorse appellant's argument would deprive the State of its ability to maintain public property
for its intended purposes because the criminal-trespass statute would not be applicable to public
property at all.

 The public, including appellant, has a limited right of access to the University of
Texas campus. UTPD has authority to enforce the criminal-trespass statute on that campus. We
conclude that evidence sufficiently demonstrated that the officers who enforced the statute had a
greater right of possession of the university campus than did appellant. We overrule appellant's
second issue.


CONCLUSION

 Having overruled appellant's issues, we affirm the county court at law's judgment.



 

 Lee Yeakel, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Yeakel

Affirmed

Filed: March 30, 2000

Publish

1.   This statute was modified by 1999 legislation. See Act of May 21, 1999, 76th Leg., R.S.,
ch. 161, § 1, 1999 Tex. Gen. Laws 633, 633; Act of May 21, 1999, 76th Leg., R.S., ch. 169,
§§ 1-2, 1999 Tex. Gen. Laws 638, 638-39; Act of June 18, 1999, 76th Leg., R.S., ch. 765,
§§ 1-3, 1999 Tex. Gen. Laws 3383, 3383-384. Because the amendments do not affect this case,
we will cite to the current code for convenience.
2.   The criminal-trespass statute provides: "(a) A person commits an offense if he enters or
remains on property or in a building of another without effective consent and he: (1) had notice
that the entry was forbidden; or (2) received notice to depart but failed to do so." Tex. Penal
Code Ann. § 30.05(a).
3.   In Rhett, the court addressed former appellate rule 52(a), which is substantially similar to
current Rule 33.1(a). See 839 S.W.2d at 94; Tex. R. App. P. 33.1(a) cmt. (West 2000).
4.   No Texas court has considered whether the criminal-trespass statute is unconstitutionally
overbroad. There are, however, decisions that address whether the statute is unconstitutional as
applied to particular activity on public property. See Otwell v. State, 850 S.W.2d 815, 816 (Tex.
App.--Fort Worth 1993, pet. ref'd) (upheld conviction of criminal trespass involving city-owned
park and building); Reed v. State, 762 S.W.2d 640, 642 (Tex. App.--Texarkana 1988, pet. ref'd)
(upheld conviction of criminal trespass on high school premises). Neither case found the
application of the criminal-trespass statute to public property to be unconstitutional. See Otwell,
850 S.W.2d at 818; Reed, 762 S.W.2d at 644.
5.   We do not hold that the entire university campus is a nonpublic forum. There may be some
areas of campus that are open to the public for expressive activities. In this particular case,
appellant was in a television lounge in the student union building when first warned and in the
Flawn Academic Center when subsequently warned and later charged. Testimony at trial
indicated that the lounge was restricted to students, faculty, and staff. The Flawn Academic
Center houses a library, offices, and a computer lab. These are not traditional public forums,
such as a public street or park. There is no evidence that the university has opened these areas
to the public for the purpose of expressive activities. 
6.   We decline to follow Grody for another reason. Grody was decided before Broadrick. In
Broadrick, the Supreme Court observed that the Oklahoma statute "regulates a substantial
spectrum of conduct that is as manifestly subject to state regulation as the public peace or criminal
trespass." Broadrick v. Oklahoma, 413 U.S. 601, 613 (1973) (emphasis added). The Indiana
Supreme Court did not have the benefit of Broadrick.
7.   The Penal Code defines "owner" as a person who "has title to the property, possession of
the property, whether lawful or not, or a greater right of possession of the property than the
actor . . . ." Tex. Penal Code Ann. § 1.07(a)(35) (West 1994) (emphasis added).
8.   Some courts have been concerned that showing a greater right of possession of the property
should not be sufficient for a conviction of criminal trespass because under that standard, "one
could be convicted of entering on property in which he owned a partial interest." Garcia, 838
S.W.2d at 830; see also Arnold, 867 S.W.2d at 379 (Clinton, J., dissenting). However, that
concern is not applicable to a criminal trespass on public property. 


BR WP="BR1">
CONCLUSION

 Having overruled appellant's issues, we affirm the county court at law's judgment.



 

 Lee Yeakel, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Yeakel

Affirmed

Filed: March 30, 2000

Publish

1.   This statute was modified by 1999 legislation. See Act of May 21, 1999, 76th Leg., R.S.,
ch. 161, § 1, 1999 Tex. Gen. Laws 633, 633; Act of May 21, 1999, 76th Leg., R.S., ch. 169,
§§ 1-2, 1999 Tex. Gen. Laws 638, 638-39; Act of June 18, 1999, 76th Leg., R.S., ch. 765,
§§ 1-3, 1999 Tex. Gen. Laws 3383, 3383-384. Because the amendments do not affect this case,
we will cite to the current code for convenience.
2.   The criminal-trespass statute provides: "(a) A person commits an offense if he enters or
remains on property or in a building of another without effective consent and he: (1) had notice
that the entry was forbidden; or (2) received notice to depart but failed to do so." Tex. Penal
Code Ann. § 30.05(a).
3.   In Rhett, the court addressed former appellate rule 52(a), which is substantially similar to
current Rule 33.1(a). See 839 S.W.2d at 94; Tex. R. App. P. 33.1(a) cmt. (West 2000).
4.   No Texas court has considered whether the criminal-trespass statute is unconstitutionally
overbroad. There are, however, decisions that address whether the statute is unconstitutional as
applied to particular activity on public property. See Otwell v. State, 850 S.W.2d 815, 816 (Tex.
App.--Fort Worth 1993, pet. ref'd) (upheld conviction of criminal trespass involving city-owned
park and building); Reed v. State, 762 S.W.2d 640, 642 (Tex. App.--Texarkana 1988, pet. ref'd)
(upheld conviction of criminal trespass on high school premises). Neither case found the
application of the criminal-trespass statute to public property to be unconstitutional. See Otwell,
850 S.W.2d at 818; Reed, 762 S.W.2d at 644.
5.   We do not hold that the entire university campus is a nonpublic forum. There may be some
areas of campus that are open to the public for expressive activities. In this particular case,
appellant was in a television lounge in the student union building when first warned and in the
Flawn Academic Center when subsequently warned and later charged. Testimony at trial
indicated that the lounge was restricted to students, faculty, and staff. The Flawn Academic
Center houses a library, offices, and a computer lab. These are not traditional public forums,
such as a public street or park. There is no evidence that the university has opened these areas
to the public for the purpose of