Michael BADER, Appellant,

v.

The STATE of Texas, Appellee.

No. 03–99–00014–CR.

Court of Appeals of Texas,
Austin.

March 30, 2000.

Jerald C. Finney, Austin, for appellant.

Giselle Horton, Asst. County Atty., Austin, for appellee.

Before Chief Justice ABOUSSIE, Justices B.A. SMITH and YEAKEL.

LEE YEAKEL, Justice.

A jury convicted appellant, Michael Bader, of criminal trespass. *See* Tex. Penal Code Ann. § 30.05 (West Supp.2000)[1] ("criminal-trespass statute"). The county court at law sentenced appellant to fifteen days' confinement in the Travis County Jail. Appellant raises two issues on appeal: (1) the criminal-trespass statute is unconstitutional on its face and as applied to him, and (2) the evidence was insufficient to establish that he was on the property "of another" as required by the criminal-trespass statute. *See id.* We will affirm the county court at law's judgment.

## FACTUAL BACKGROUND

On August 12, 1998, appellant was arrested for criminal trespass on the campus of the University of Texas at Austin. Appellant had previously received two criminal-trespass warnings for being on the university campus. Officer Pieper of the University of Texas Police Department (UTPD) issued appellant his first warning on September 20, 1997. At trial, Officer Pieper testified that, at the time of the first warning, appellant was in a television lounge inside the student union building. Access to the lounge was restricted to university students, faculty, and staff. Upon issuance of the warning, Officer Pieper told appellant that if he returned to campus, he would be arrested for criminal trespass. The warning extended to the entire campus.

Officer Chartier, also of UTPD, issued appellant's second warning on March 11, 1998. Officer Chartier found appellant sleeping on a sofa in the Flawn Academic Center. Appellant refused to sign the warning but left campus at Officer Chartier's request.

On August 13, 1998, a security guard saw appellant at a computer terminal in the Flawn Academic Center and reported his presence to UTPD. UTPD Officer Allen responded to the call and asked appellant to accompany him from the building. The officer requested appellant's identification and appellant gave him a false name and birth date. Officer Allen testified that because he was suspicious of the information appellant gave him, he called the UTPD station to request assistance from another officer. Officer Chartier arrived and recognized appellant. Using appellant's Capital Metro identification card, Officer Allen discovered appellant's actual identity and his prior criminal-trespass warnings. Officer Allen then arrested appellant for criminal trespass.

The University of Texas is a public, state-supported university. Appellant was neither a student nor a member of the university's faculty or staff at the time of these events.

## DISCUSSION

By his first issue, appellant argues that the criminal-trespass statute is unconstitutional on its face and as applied to him in this particular situation.[2] By his second issue, he contends that there was insufficient evidence to prove beyond a reasonable doubt all of the elements of criminal

1. This statute was modified by 1999 legislation. *See* Act of May 21, 1999, 76th Leg., R.S., ch. 161, § 1, 1999 Tex. Gen. Laws 633, 633; Act of May 21, 1999, 76th Leg., R.S., ch. 169, §§ 1–2, 1999 Tex. Gen. Laws 638, 638–39; Act of June 18, 1999, 76th Leg., R.S., ch. 765, §§ 1–3, 1999 Tex. Gen. Laws 3383, 3383–384. Because the amendments do not affect this case, we will cite to the current code for convenience.

2. The criminal-trespass statute provides: "(a) A person commits an offense if he enters or remains on property or in a building of another without effective consent and he: (1) had notice that the entry was forbidden; or (2) received notice to depart but failed to do so." Tex. Penal Code Ann. § 30.05(a).

trespass because the State did not show that appellant was on the property "of another." *See id.*

*Constitutional Challenges*

 Appellant argues that the Texas criminal-trespass statute is unconstitutionally overbroad and unconstitutional as applied to him. The State contends that appellant waived his constitutional challenges because he failed to raise these issues before the trial court. *See* Tex. R.App. P. 33.1. Appellant, on the other hand, asserts that constitutional questions may be raised for the first time on appeal. We agree that a *facial* constitutional challenge may be first addressed on appeal. *See Rabb v. State*, 730 S.W.2d 751, 752 (Tex.Crim.App.1987) ("Questions involving the constitutionality of a statute upon which a defendant's conviction is based should be addressed by appellate courts, even when such issues are raised for the first time on appeal."); *Gravis v. State*, 982 S.W.2d 933, 937 (Tex.App.—Austin 1998, pet. ref'd). However, there is a distinction between facial and "as applied" constitutional challenges because only facial challenges affect the jurisdiction of a court to render a judgment against a defendant. *See McGowan v. State*, 938 S.W.2d 732, 740 (Tex.App.—Houston [14th Dist.] 1996), *aff'd. sub nom. Weightman v. State*, 975 S.W.2d 621 (Tex.Crim.App. 1998). In contrast, an "as applied" challenge acts as a defense to a conviction under a particular statute. *See id.* at 741–42. That statute, however, still confers upon the court the power to act. *See id.* at 741. An allegation of unconstitutional *application* of a statute cannot be raised for the first time on appeal; it must first be made to the trial court. *See Medina v. State*, 986 S.W.2d 733, 735 (Tex.App.—Amarillo 1999, pet. ref'd); *McGowan*, 938 S.W.2d at 742; *Webb v. State*, 899 S.W.2d 814, 817–18 (Tex.App.—Waco 1995, pet. ref'd); Tex.R.App. P. 33.1.

 Relying on *Smith v. State*, 772 S.W.2d 946 (Tex.App.—Dallas 1989, pet. ref'd), appellant argues that the reasoning in *Rabb* extends to both facial and "as applied" constitutional arguments. In *Smith*, the court of appeals addressed both facial and "as applied" constitutional challenges for the first time on appeal without distinguishing between the two types of arguments. *See Smith*, 772 S.W.2d at 948. However, we choose to follow *Medina*, *McGowan*, and *Webb*, which apply the *Rabb* exception only to facial challenges. Texas Rule of Appellate Procedure 33.1 reflects the policy that issues should initially be presented to the trial court so as to provide that court with an opportunity to prevent error. *See Rhett v. State*, 839 S.W.2d 93, 94 (Tex.Crim.App.1992).[3] Any exceptions to this rule should be narrowly drawn.

 Appellant did not preserve his "as applied" argument; his first issue is overruled to the extent it complains that application of the criminal-trespass statute to his particular situation is unconstitutional.

 We now consider appellant's contention that the Texas criminal-trespass statute is unconstitutional on its face. Appellant argues that the statute is overbroad because it encompasses public universities and permits university officials to ban persons from campus for no reason or unconstitutional reasons. A statute may be overbroad if, although designed to punish activities that are not constitutionally protected, it also includes within its scope activities that come within the protection of the First Amendment. *See* 4 Ronald D. Rotunda & John E. Nowak, *Treatise on Constitutional Law*, 263–64 (1999).

> An overbroad statute "sweeps within its scope a wide range of both protected and non-protected expressive activity." *Hobbs v. Thompson*, 448 F.2d 456, 460 (5th Cir.1971).... A statute that is found to be overbroad may not be en-

---

**3.** In *Rhett*, the court addressed former appellate rule 52(a), which is substantially similar to current Rule 33.1(a). *See* 839 S.W.2d at 94; Tex.R.App. P. 33.1(a) cmt. (West 2000).

forced at all, even against speech that could constitutionally be prohibited by a more narrowly drawn statute. *See Broadrick v. Oklahoma,* 413 U.S. 601, 613, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973).

However, a statute will not be invalidated for overbreadth merely because it is possible to imagine some unconstitutional applications. *See Members of City Council v. Taxpayers for Vincent,* 466 U.S. 789, 800, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984).... Therefore, the [United States] Supreme Court has developed a requirement that the overbreadth must be "substantial" before the statute will be held unconstitutional on its face. *See Taxpayers for Vincent,* 466 U.S. at 800, 104 S.Ct. 2118.... Only if the statute "reaches a substantial amount of constitutionally protected conduct" may it be struck down for overbreadth. *City of Houston v. Hill,* 482 U.S. 451, 458, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987) (quoting *Village of Hoffman Estates* [*v. Flipside, Hoffman Estates, Inc.*], 455 U.S. [489,] 494, 102 S.Ct. 1186, 71 L.Ed.2d 362 [ (1982) ] ).

*Commission for Lawyer Discipline v. Benton,* 980 S.W.2d 425, 435-36 (Tex.1998), *cert. denied,* 526 U.S. 1146, 119 S.Ct. 2021, 143 L.Ed.2d 1033 (1999). The criminal-trespass statute is clearly designed to punish activities that are not constitutionally protected. The question before us is whether the statute also "reaches a substantial amount of constitutionally protected conduct." *Id.* Appellant provides us with little help in making this determination. He makes no allegation that his speech was wrongfully suppressed or that he was a victim of discrimination because of his viewpoints. He does not claim that the criminal-trespass statute, by its terms,

requires him to obtain approval for expressive or communicative conduct on the university campus. He concedes that he has suffered no violation of a constitutional right or freedom protected by the First Amendment. Rather, he appears to argue that a public university must have a constitutional basis to exclude a person from its campus. He asserts that he had a constitutional right to be on the university campus and that right "was violated due to the enforcement of an unconstitutional statute." [4] We do not believe this assertion puts the potential deprivation of a right protected by the First Amendment in issue, and therefore appellant does not appear to present a proper overbreadth challenge to the criminal-trespass statute. However, in the interest of justice we will consider appellant's argument. *See* Tex. R.App. P. 38.1(e); 38.9. In so doing, we recognize that a litigant may, in certain instances, attack an overly broad statute without demonstrating that his own conduct could not be regulated by a statute that is more narrowly drawn. *See Broadrick v. Oklahoma,* 413 U.S. 601, 612, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). Construing appellant's complaint liberally, we believe it asserts that the statute's "very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Id.*

The extent to which a government may control access to its property for expressive purposes depends on the nature of the forum. *See Perry Educ. Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 45-46, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983); *Reed,* 762 S.W.2d at 643. The respective limitations upon government regulation of speech within a forum depend on the particular nature of the forum.

---

**4.** No Texas court has considered whether the criminal-trespass statute is unconstitutionally overbroad. There are, however, decisions that address whether the statute is unconstitutional as applied to particular activity on public property. *See Otwell v. State,* 850 S.W.2d 815, 816 (Tex.App.—Fort Worth 1993, pet. ref'd) (upheld conviction of criminal trespass involving city-owned park and building); *Reed v. State,* 762 S.W.2d 640, 642 (Tex. App.—Texarkana 1988, pet. ref'd) (upheld conviction of criminal trespass on high school premises). Neither case found the application of the criminal-trespass statute to public property to be unconstitutional. *See Otwell,* 850 S.W.2d at 818; *Reed,* 762 S.W.2d at 644.

*See Perry Educ. Ass'n,* 460 U.S. at 45, 103 S.Ct. 948. A public forum is an area that has traditionally been devoted to assembly and public debate, such as a public street or a sidewalk. *See id.* In a public forum, speech may only be suppressed if it is necessary to achieve a compelling governmental interest. *See id.* When permitted, regulations restricting speech may consist only of reasonable time, place, and manner regulations that are narrowly drawn to achieve the governmental interest and leave ample alternative channels for expression. *See id.* at 46, 103 S.Ct. 948. A limited public forum is one that the government has opened for public expressive activity. *See id.* Speech in a limited public forum may be regulated in the same fashion as a traditional public forum as long as the limited forum remains open. *See id.* Finally, a nonpublic forum is one that neither traditionally nor by government action has become a forum for public communication. *See id.* In a nonpublic forum, speech may be restricted so long as the regulations are reasonable and do not attempt to suppress expression because of a public official's opposition to the speaker's views. *See id.*

■■■■■■ The University of Texas campus is generally a nonpublic forum.[5] Public school facilities and grounds have consistently been held to be nonpublic forums, unless there has been an intentional opening of them for expressive activity. *See Reed,* 762 S.W.2d at 644. Therefore, the university may restrict access so long as the regulations are reasonable and do not attempt to suppress expression because of opposition to a speaker's views. *See Perry Educ. Ass'n,* 460 U.S. at 46, 103 S.Ct. 948. Additionally, "[a] general trespass statute may be constitutionally applied, even to those who trespass in order to communicate, so long as it is applied without discrimination and is not used for the primary purpose of suppressing speech." *See Reed,* 762 S.W.2d at 644. We fail to see how the criminal-trespass statute could "[reach] a substantial amount of constitutionally protected activity," which is requisite to facial invalidity on overbreadth grounds. *See Benton,* 980 S.W.2d at 436 (citing *Hill,* 482 U.S. at 458, 107 S.Ct. 2502).

■■■■ Appellant relies on *Grody v. State,* 257 Ind. 651, 278 N.E.2d 280 (1972), to support his contention that the criminal-trespass statute is overbroad. In *Grody,* the Indiana Supreme Court held that a criminal-trespass statute that applied only to educational institutions was unconstitutionally overbroad. *See Grody,* 278 N.E.2d at 282–83. The statute at issue in *Grody* is distinguishable from the Texas criminal-trespass statute in two ways. First, the Texas statute more clearly defines who may enforce its provisions by granting enforcement power to "the owner or someone with apparent authority to act for the owner." Tex. Penal Code Ann. § 30.05(b)(2)(A). The Indiana statute allowed enforcement by "duly constituted officials." *See Grody,* 278 N.E.2d at 281. Second, the Indiana statute expressly permitted an official to remove someone from an educational institution "regardless of reason." *See id.* The Texas statute does not grant such unfettered discretion to those enforcing the statute. The *Grody* court seemed particularly concerned that because the Indiana trespass statute expressly granted absolute enforcement authority to "officials," persons could be arrested for engaging in constitutionally protected activity. *See id.* at 282–83.

---

5. We do not hold that the entire university campus is a nonpublic forum. There may be some areas of campus that are open to the public for expressive activities. In this particular case, appellant was in a television lounge in the student union building when first warned and in the Flawn Academic Center when subsequently warned and later charged. Testimony at trial indicated that the lounge was restricted to students, faculty, and staff. The Flawn Academic Center houses a library, offices, and a computer lab. These are not traditional public forums, such as a public street or park. There is no evidence that the university has opened these areas to the public for the purpose of expressive activities.

The Texas statute is not so broadly drafted. "[A] statute will not be invalidated for overbreadth merely because it is possible to imagine some unconstitutional applications." *Benton*, 980 S.W.2d at 436 (citing *Broadrick*, 413 U.S. at 613, 93 S.Ct. 2908).[6]

In *Broadrick*, the Supreme Court reviewed an Oklahoma statute that restricted the political activities of state personnel. *See* 413 U.S. at 602, 93 S.Ct. 2908. The Court observed that, where *conduct* is involved, the overbreadth of a statute must be both real and substantial when judged in relation to its legitimate sweep, and whatever problems exist should be cured in a particular case by an analysis of the fact situation to which the statute's sanctions, assertedly, may not be applied. *See id.* at 614–15, 93 S.Ct. 2908. Appellant's facts do not present a situation that bars application of the criminal-trespass statute's sanctions. We hold that the Texas criminal-trespass statute is not substantially overbroad and is not, therefore, unconstitutional on its face. We overrule appellant's first issue.

*Insufficiency of Evidence*

By his second issue, appellant asserts that evidence was legally insufficient to show that he entered and remained on the property "of another." *See* Tex. Penal Code Ann. § 30.05. Specifically, appellant argues that his conviction should be reversed because the evidence does not demonstrate that the University of Texas campus is the property "of another," but rather shows that the property belongs to all citizens of Texas, including appellant. The State responds that any rational trier of fact could have found beyond a reasonable doubt that the university police had a greater right of possession of the property than appellant.

To determine the legal sufficiency of the evidence to support a criminal conviction, we view all the evidence in the light most favorable to the verdict and ask whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Staley v. State*, 887 S.W.2d 885, 888 (Tex.Crim. App.1994). Any inconsistencies in the evidence should be resolved in favor of the verdict. *See Moreno v. State*, 755 S.W.2d 866, 867 (Tex.Crim.App.1988). This standard of review is the same for both direct and circumstantial evidence. *See Green v. State*, 840 S.W.2d 394, 401 (Tex.Crim.App. 1992).

The elements of criminal trespass are that: (1) a person, (2) without effective consent, (3) enters or remains on the property or in a building of another, (4) knowingly, intentionally, or recklessly, (5) when he had notice that entry was forbidden or received notice to depart and failed to do so. *See* Tex. Penal Code Ann. § 30.05; *Johnson v. State*, 665 S.W.2d 554, 556 (Tex.App.—Houston [1st Dist.] 1984, no pet.). " 'Another' means a person other than the actor." Tex. Penal Code Ann. § 1.07(a)(5) (West 1994).

In *Arnold v. State*, 867 S.W.2d 378 (Tex. Crim.App.1993), the defendant was accused of trespassing in a courthouse. *See* 867 S.W.2d at 378. The information against him, instead of alleging that the defendant was on the property "of another," alleged that the defendant trespassed on property "owned by Rey Cestero," a United States Marshal responsible for security at the courthouse. *See id.* The court of criminal appeals held that "in criminal trespass cases where the State alleges *ownership*, [Texas Penal Code sec-

---

6. We decline to follow *Grody* for another reason. *Grody* was decided before *Broadrick*. In *Broadrick*, the Supreme Court observed that the Oklahoma statute "regulates a substantial spectrum of conduct that is as manifestly subject to state regulation as the public peace or

criminal trespass." *Broadrick v. Oklahoma*, 413 U.S. 601, 616, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973) (emphasis added). The Indiana Supreme Court did not have the benefit of *Broadrick*.

tion 1.07(a)(35) ] is applicable and the State may establish ownership by proving beyond a reasonable doubt that the complainant had a greater right of possession than the defendant." *Id.* (emphasis added).[7] Here, the information did not allege "ownership"; rather, the information alleged that appellant was on the property "of another."

■ The court of criminal appeals has not decided whether the definition of ownership under section 1.07(a)(35) of the Texas Penal Code applies in cases where the information does not allege ownership. *See Langston v. State,* 855 S.W.2d 718, 721 (Tex.Crim.App.1993). The court, however, has indicated that requiring proof of ownership as opposed to demonstrating that the property belongs to "another" imposes a greater burden upon the State. *See State v. Kinsey,* 861 S.W.2d 383, 385 (Tex. Crim.App.1993); *Langston,* 855 S.W.2d at 721. Based on this reasoning, in cases involving *public* property, we think the State satisfies the "of another" element by showing that the complainant has a greater right of possession of the property.

Citing *State v. Staley,* 814 S.W.2d 534 (Tex.App.—Houston [1st Dist.] 1991, pet. ref'd), and *Palmer v. State,* 764 S.W.2d 332 (Tex.App.—Houston [1st Dist.] 1988, no pet.), appellant argues that the phrase "of another" required the State to show that appellant did not have title or any right of possession of the property and that a finding of a greater right of possession on the part the university police was not sufficient to support his conviction. *See Staley,* 814 S.W.2d at 535; *Palmer,* 764 S.W.2d at 334. In *Staley,* relying on *Palmer,* the court of appeals dismissed an information for failure to state an offense because it alleged the defendant trespassed on property "owned by" the complainant rather than using the statutory phrase "of another." *See Staley,* 814 S.W.2d at 535. The court explained that "[i]n both statutory and common usage, 'owned by' alleges a *lesser* burden of proof for the State than is required by the criminal trespass statute." *Id.* (emphasis added). The reasoning and result of *Staley* have been implicitly discredited by subsequent court of criminal appeals cases. *See Kinsey,* 861 S.W.2d at 384 (information using phrase "owned by" rather than "of another" sufficiently stated offense of criminal trespass; requiring State to prove ownership increases prosecution's burden of proof); *Langston,* 855 S.W.2d at 721; *see also Vanderburg v. State,* 874 S.W.2d 683, 684 (Tex.Crim.App. 1994) (reversing lower court that relied on *Staley* and *Palmer* based on holding in *Arnold* and *Langston* ); *State v. Garcia,* 861 S.W.2d 386, 387 (Tex.Crim.App.1993) (reversing lower court that relied on *Staley* and *Palmer* based on holding in *Kinsey* ).

In *Palmer,* the court of appeals reviewed a case in which a defendant was convicted of criminal trespass under an information that alleged ownership. *See Palmer,* 764 S.W.2d at 333. The court noted that there was a dispute concerning whether the defendant owned a partial interest in the property at issue. *See id.* at 335. The court held that a finding of a "greater right of possession" under the Penal Code's definition of "owner" was not sufficient to support a conviction under the criminal-trespass statute. *See id.* at 334. *Palmer* has likewise been implicitly rejected by the court of criminal appeals in *Arnold* and *Langston.* *See Arnold,* 867 S.W.2d at 378 (State may satisfy criminal-trespass statute in cases where State alleged ownership by proving greater right of possession); *Langston,* 855 S.W.2d at 721; *see also Vanderburg,* 874 S.W.2d at 684; *Garcia,* 861 S.W.2d at 387. We hold that in cases involving public property, the State satisfies the "of another" element of the criminal-trespass statute by proving beyond a reasonable doubt that the com-

---

7. The Penal Code defines "owner" as a person who "has title to the property, possession of the property, whether lawful or not, or a *greater right of possession of the property than the actor . . . .*" Tex. Penal Code Ann. § 1.07(a)(35) (West 1994) (emphasis added).

plainant has a greater right of possession of the property than does the accused.[8] To endorse appellant's argument would deprive the State of its ability to maintain public property for its intended purposes because the criminal-trespass statute would not be applicable to public property at all.

The public, including appellant, has a limited right of access to the University of Texas campus. UTPD has authority to enforce the criminal-trespass statute on that campus. We conclude that evidence sufficiently demonstrated that the officers who enforced the statute had a greater right of possession of the university campus than did appellant. We overrule appellant's second issue.

## CONCLUSION

Having overruled appellant's issues, we affirm the county court at law's judgment.

---

**8.** Some courts have been concerned that showing a greater right of possession of the property should not be sufficient for a conviction of criminal trespass because under that standard, "one could be convicted of entering on property in which he owned a partial interest." *Garcia,* 838 S.W.2d at 830; *see also Arnold,* 867 S.W.2d at 379 (Clinton, J., dissenting). However, that concern is not applicable to a criminal trespass on *public* property.